FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 02, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROSALINDA M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:18-CV-03077-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 15. Attorney D. James Tree represents Rosalinda M. (Plaintiff); Special Assistant United States Attorney Justin L. Martin represents the Commissioner of Social Security (Defendant). Both parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on June 24, 2014, Tr. 63, alleging disability since September 1, 2006, Tr. 157, due to anxiety, depression, gastrointestinal problems, and acid reflux. Tr. 191. The

ORDER GRANTING PLAINTIFF'S MOTION - 1

application was denied initially and upon reconsideration. Tr. 98-108. Administrative Law Judge (ALJ) Timothy Mangrum held a hearing on August 25, 2016 and heard testimony from Plaintiff and vocational expert Kimberly Mullinax. Tr. 43-62. The ALJ issued an unfavorable decision on March 30, 2017.[1] Tr. 21-37. The Appeals Council denied review on March 15, 2018. Tr. 1-5. The ALJ's March 30, 2017 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on May 16, 2018. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 30 years old at the beginning of the unadjudicated period. Tr.

---

[1] In his decision, the ALJ declined to reopen Plaintiff's previous application and defined the unadjudicated period as March 6, 2008 to the date of the decision at bar. Tr. 21. The ALJ also found that Plaintiff's reported onset date was July 30, 2012. *Id*. This is instead the date Plaintiff reported she stopped working. Tr. 191. The alleged onset date on her application is September 1, 2006. Tr. 157, 191. Therefore, on remand, the ALJ will address the entire unadjudicated period, beginning March 6, 2008. He will not simply limit his disability determination to the application date and forward. This is pertinent because there is evidence that Plaintiff's Body Mass Index (BMI) reached listing levels in 2013 and 2014. Therefore, she may have met a listing prior to and after her application date of June 24, 2014. While benefits are not payable prior to the application date, 20 C.F.R. § 416.202(g), the ALJ shall not limit his consideration of evidence to only the period benefits would be payable, but he will consider the entire unadjudicated period unless the onset date is amended by Plaintiff.

156-57. Plaintiff did not complete high school, but she did earn her GED. Tr. 192. Her reported work history includes the jobs of babysitter, cashier/clerk, housekeeper in a motel, and agricultural laborer. *Id*. When applying for benefits Plaintiff reported that she stopped working on July 30, 2012 because of her conditions, but that she made changes to her work activity due to her conditions as early as September 1, 2006. Tr. 191.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process

for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 30, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from June 24, 2014 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 24, 2014, the date of application. Tr. 23.

At step two, the ALJ determined that Plaintiff had the following severe impairments: constipation and abdominal/epigastric pain, secondary to gastrointestinal reflux disease; anxiety disorder; personality disorder; and depressive disorder. Tr. 23.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of work at all exertional levels with the following limitations: "she is limited to simple repetitive tasks; and she can tolerate

frequent contact with coworkers and the general public." Tr. 26. The ALJ identified Plaintiff's past relevant work as cashier II and found that she could not perform this past relevant work. Tr. 36.

At step five, the ALJ considered Plaintiff's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines and found that a finding of "not disabled" was appropriate under the framework of section 204.00. Tr. 36-37. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from June 24, 2014, through the date of the ALJ's decision. Tr. 37.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends that the ALJ erred by (1) failing to properly consider Listing 5.08 at step three, (2) failing to address Plaintiff's headaches at step two, (3) failing to properly consider Plaintiff's physical impairments in determining her residual functional capacity,[2] (4) failing to properly address the medical opinions in the file, (5) failing to properly consider the evidence from Plaintiff's mother, and (6) failing to properly consider Plaintiff's symptom statements.

## DISCUSSION[3]

### 1. Listing 5.08

Plaintiff challenges the ALJ's step three determination by asserting that she

---

[2]In Plaintiff's briefing, she has the step two challenge and the residual functional capacity challenge under the same heading. ECF No. 14 at 2, 5-8. For clarity, the Court has separated these reasons into separate headings.

[3]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies

meets listing 5.08 based on her BMI, weight, and height readings in the record. ECF No. 14 at 4-5.

A claimant is considered disabled at step three when her impairment meets the durational requirement and her impairments meet or equal a listing impairment in Appendix 1. 20 C.F.R. § 416.920(d). Listing 5.08 is met when a Plaintiff demonstrates "Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 CFR Part 404, Subpart P, Appendix 1.

In his decision, the ALJ found that Plaintiff did not meet or equal Listing 5.08:

> the claimant had a recorded BMI of 18.5 in March 2013 (Ex. 5F/56). At the next encounter on June 27, 2013, the claimant had a BMI of 17.3 (Ex. 5F/54). Then, on August 8, 2013, the claimant's BMI was 17.1 (Ex. 5F/43). However, although the claimant's BMI was below 17.50 at the latter two encounters, the encounters were not at least 60 days apart. Thereafter, the claimant's BMI increased to 17.6 on September 7, 2013 (Ex. 5F/32), and continued to increase at subsequent encounters.

Tr. 24.

However, a review of the medical evidence shows that Plaintiff's BMI was below 17.50 at least sixty days apart. On June 18, 2013, Plaintiff's weight was 108 pounds (or 48.98 kg) and her height was 5 feet, 6 inches. Tr. 493. This results in a

---

to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

BMI of 17.4.[4] On June 24, 2013, Plaintiff's weight was 106 pounds (or 48.08 kg) and height was 5 feet, 6 inches. Tr. 316. This results in a BMI of 17.1. On June 27, 2013, Plaintiff had a recorded BMI of 17.3. Tr. 660. On July 9, 2013, Plaintiff weighed 107 pounds and was listed as 5 feet, 3 inches tall.[5] Tr. 533. This results in a BMI of 18.95. However, on the next day, her weight was listed as 104 pounds and her height was listed as 5 feet, 6 inches. Tr. 552. This results in a BMI of 16.8. On July 16, 2013, Plaintiff had a recorded BMI of 17.1. Tr. 658. On July 29, 2013, Plaintiff had a recorded BMI of 17.5. Tr. 656. On August 8, 2013, Plaintiff had a recorded BMI of 17.1. Tr. 652, 654. On August 13, 2013, Plaintiff had a recorded BMI of 16.95. Tr. 864. On September 7, 2013, Plaintiff had a recorded BMI of 17.6. Tr. 649. On October 23, 2013, Plaintiff had a BMI recorded of 17.7. Tr. 646. On November 1, 2013, Plaintiff had a recorded BMI of 17.4. Tr. 646. On January 16, 2014, Plaintiff had a recorded BMI of 17.6. Tr. 641. On January 23, 2014, Plaintiff had a recorded BMI of 17.4. Tr. 639. On February 18, 2014, Plaintiff had a recorded BMI of 17.9. Tr. 636. On February 27, 2014, Plaintiff had a recorded BMI of 18.3. Tr. 633. Plaintiff's BMI continued to improve with a May 7, 2014 recorded BMI of 18.14, Tr. 869, and a July 22, 2014 recorded BMI of 18.79, Tr. 871.

Here, there is at least sixty days between the June 24, 2013 weight and height readings resulting in a BMI of 17.1 and the January 23, 2014 recorded BMI of 17.4. Therefore, the ALJ erred in his determination that while Plaintiff's BMI

---

[4] When the provider failed to specifically record a BMI calculation, the Court used the non-metric conversion formula to calculate the BMI. *See* 2 DAVID A. MORTON, III, M.D., SOCIAL SECURITY DISABILITY MEDICAL TESTS 48 (1st ed. 2015) (Body Mass Index = [weight (pounds)/height (inches)$^2$] x 703).

[5] This recorded height is inconsistent with the other height recordings in the record, which show Plaintiff being 5 feet, 6inches tall.

ORDER GRANTING PLAINTIFF'S MOTION - 7

dipped below 17.50, she did not have two readings below this value at least sixty days apart.

Defendant argues that the ALJ's step three determination should be upheld because Plaintiff failed to establish that Plaintiff experienced weight loss, that such weight loss was due to a digestive disorder, and that the weight loss persisted despite continued treatment as prescribed. ECF No. 15 at 8. However, these are post-hoc rationalizations that the Court will not consider. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). The ALJ only cited to the BMI ratings in the medical evidence and did not discuss the above elements of Listing 5.08. Tr. 24.

Since the ALJ erred in his determination as to the BMI ratings in the record, the case is remanded for additional proceedings for the ALJ to address Listing 5.08. The ALJ will call a medical expert to testify regarding whether Plaintiff met or equaled the listing. In response to Defendant's assertion that Plaintiff's weight loss was attributed to her anxiety instead of her digestive disorder, ECF No. 15 at 9, the ALJ will also call a psychological expert and ask that expert to provide an opinion regarding whether Plaintiff equaled Listing 5.08 when her weight loss and psychological impairments are considered in combination. Furthermore, the ALJ will take testimony regarding onset of any potential listing level impairment and whether Plaintiff improved to the point she no longer met or equaled a listing. In the event that Plaintiff did not meet or equal a listing, or she improved to the point she no longer met or equaled a listing, the ALJ will take testimony regarding Plaintiff's residual functional capacity. For the psychological expert, this will require addressing the mental residual functional capacity assessment questions in addition to the B criteria of the 12.00 listings. Simply addressing the B criteria of the 12.00 listings will not be sufficient for addressing the step four residual functional capacity determination.

## 2. Step Two

Plaintiff challenges the ALJ's step two determination by asserting that he failed to address her headaches. ECF No. 14 at 5-7.

At step two of the sequential process, the ALJ must determine whether a claimant suffers from a "severe" impairment. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921. "[O]nce a claimant has shown that [she] suffers from a medically determinable impairment, [she] next has the burden of proving that these impairments and their symptoms affect [her] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). If the claimant fulfills this burden, the ALJ must find the impairment "severe." *Id*.

Considering the case is being remanded for the ALJ to call a medical and a psychological expert to testify regarding step three, the ALJ will also ask the experts to testify as to the impairments that are medically determinable and whether those that are medically determinable are severe. The ALJ will then make a new step two determination on remand.

## 3. Residual Functional Capacity

Plaintiff challenges the ALJ's residual functional capacity determination by arguing that the ALJ failed to address how Plaintiff's underweight status affects her ability to perform work at the more demanding exertional levels. ECF No. 14 at 7-8.

A claimant's residual functional capacity is what that claimant can still do despite her limitations. S.S.R. 96-8p. "It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural

body build, and the activities the individual was accustomed to doing in his or her previous work." *Id*. Therefore, upon remand, if the ALJ finds Plaintiff's underweight status is the result of a medically determinable impairment, he will consider all medically determinable impairments in forming his residual functional capacity determination.

### 4. Medical Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the opinions expressed by Tae-Im Moon, Ph.D., N.K. Marks, Ph.D., and Abby L. Myers, PA-C. ECF No. 14 at 8-17.

The ALJ has specifically been tasked with taking the testimony from a medical and a psychological expert regarding Plaintiff's residual functional capacity in the event that a step four determination is required. *See supra*. Therefore, upon remand, the ALJ will readdress all the medical opinions in the record including the opinions of the experts who testify at any remand proceedings.

### 5. Lay Witnesses

Plaintiff challenges the weight the ALJ provided to the Headache Questionnaire completed by Plaintiff's mother. ECF No. 14 at 17-18.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

The ALJ has been instructed to make a new step two determination following testimony from two medical experts. *See supra*. Therefore, upon remand the ALJ will also readdress the evidence submitted by Plaintiff's mother regarding headaches.

### 6. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom

statements were unreliable. ECF No. 14 at 18-21.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 27. The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. See 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to take the testimony of medical and psychological experts and readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome*,*" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits

when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

This case covers a lengthy period of time, including a specific period in which Plaintiff may have met a listing. Considering Plaintiff's BMI increased above the level addressed by Listing 5.08 during the relevant time period, additional proceedings are necessary to address all the requirements of Listing 5.08 and the period of time Plaintiff potentially met the listing. The ALJ will take the testimony of a medical expert and a psychological expert regarding medically determinable, severe impairments, whether or not Plaintiff met or equaled Listing 5.08, and, if necessary, Plaintiff's residual functional capacity. The ALJ will make a new determination addressing steps two through five. Additionally, the ALJ will supplement the record with any outstanding medical evidence and take testimony from a vocational expert in the event that a step four or five determination is required.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part,** and the matter is **REMANDED** for additional proceedings consistent with this order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy

to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED April 2, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION - 13